UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRANDY MARIE SCHOLL,

   Plaintiff,

   v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,[1]

   Defendant.

CASE NO. 12-cv-5721-JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 3; Consent to Proceed Before a United States Magistrate Judge, ECF No. 4). This matter has been fully briefed (*see* ECF Nos. 12, 15, 16).

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

ORDER ON PLAINTIFF'S COMPLAINT - 1

After considering and reviewing the record, the Court finds that the ALJ erred in evaluating the medical evidence and plaintiff's RFC, as the ALJ failed to account for Dr. Clifford's opinions in plaintiff's RFC and failed to provide any reason for the failure to credit Dr. Clifford's opinions fully.

The vocational expert provided no opinion as to whether or not plaintiff could perform her past relevant work if she experienced initial absenteeism issues, as opined by Dr. Clifford. As the ALJ relied on the vocational expert's opinion when finding that plaintiff was capable of performing her past relevant work, and as this finding led to the ultimate determination that plaintiff was not disabled, the ALJ's error is not harmless.

Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings.

## BACKGROUND

Plaintiff, BRANDY MARIE SCHOLL, was born in August, 1981 and was twenty-five years old on her initial alleged date of disability onset of January 1, 2007 (*see* Tr. 113). Plaintiff later amended her alleged disability onset date to March 31, 2007 (*see* Tr. 39). Plaintiff attended school to the tenth grade and has obtained her GED (Tr. 42-43). She has past relevant work experience as a courier/outside deliverer, fast food worker and motel cleaner (Tr. 31, 50-52).

Plaintiff has at least the severe impairments of social phobia and mood disorder with anxiety (10 CFR 404.1520(c)) (*see* Tr. 22). At the time of the hearing, plaintiff was living with her boyfriend (Tr. 41, 46-47).

PROCEDURAL HISTORY

Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("DIB") and a Title XVI application for supplemental security income ("SSI") benefits on January 5, 2009 (Tr. 113-26). Her applications were denied initially and following reconsideration (Tr. 57-60). Plaintiff's requested hearing was held before Administrative Law Judge Steve Lynch ("the ALJ") on October 8, 2010 (Tr. 36-56). On October 15, 2010, the ALJ issued a written decision in which he concluded that plaintiff was not disabled pursuant to the Social Security Act (Tr. 16-35).

On June 16, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-3). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in August, 2012 (*see* ECF No. 1). Defendant filed the sealed administrative record regarding this matter ("Tr.") on October 22, 2012 (*see* ECF Nos. 9, 10). In her Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ properly rejected the opinion of Maria W. Malcom, Ph.D.; (2) Whether or not the ALJ properly applied the opinion of Thomas Clifford, Ph.D. and Mary A. Gentile, Ph.D.; and (3) Whether or not the ALJ properly found plaintiff was not credible (*see* ECF No. 12, pp. 4, 13, 14).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*,

172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also  Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting*

*Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine independently whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

DISCUSSION

1. **The ALJ erred in his review of the medical evidence**.

Plaintiff complains that the ALJ gave the opinion of Dr. Thomas Clifford, Ph.D., as affirmed by Dr. Mary A. Gentile, Ph.D., "great weight," but failed to include all of Dr. Clifford's opined limitations into plaintiff's residual functional capacity ("RFC"), such as his conclusion that plaintiff likely would have initial work attendance issues (*see* Opening Brief, ECF No. 12, p. 14). Defendant responds that any error is harmless as all of the medically supported limitations were included into the hypothetical to the vocational expert (*see* Response, ECF No. 15, pp. 10-11). Defendant also contends that "the hypothetical to the vocational expert contained all limitations Dr. Clifford assessed in the narrative portion of the mental RFC form," and, therefore, any error is harmless and the hypothetical is proper (*id.* at p. 11). As the first argument by defendant implies a finding contrary to the actually findings of the ALJ, and as the second argument is incorrect factually, the Court finds plaintiff's argument to be persuasive.

The Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

In addition, according to Social Security Ruling ("SSR") 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source,

the adjudicator must explain why the opinion was not adopted." *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20. Although "Social Security Rulings do not have the force of law, [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations." *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988)) (internal citation and footnote omitted). As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations." *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984); *Paxton, supra*, 865 F.2d at 1356).

Defendant argues that the narrative portion is to be considered by the ALJ, not the check-box summary conclusion section (*see* Response, ECF No. 15, p. 11). In the narrative portion of Dr. Clifford's assessment (section III of the form), he indicated as follows:

> **Multi-tasking is likely to cause Clmnt stress & highten (sic) her anxiety level; potentially leading to functional & attendance declines. She can accept instructions for simple & detailed tasking.
>
> Clmnt's attendance will initially be impacted, as she hasn't had to present herself on a schedule for over 2 yrs. She does have the capacity to re-acclimate to the workday routine, though. She does have some work experience & can apply basic workplace safety standards & adapt/react to basic workplace change, as well as taking public transport when needed to get to a job.

(Tr. 257).

Although defendant contends that "the hypothetical to the vocational expert contained all limitations Dr. Clifford assessed in the narrative portion of the mental RFC

1  form," and therefore the hypothetical is proper (*id.* at p. 11), a review of the hypothetical

2  presented to the vocational expert ("VE") reveals this contention to be incorrect (*see* Tr.

3  52-54). At plaintiff's administrative hearing, the ALJ propounded the following

4  hypothetical to the VE:

> If we had an individual with age, education, and work experience similar to that of the claimant, who is capable of performing work at all exertional levels, but who may have difficulty coping with unusual stress encountered in a very competitive workplace, but who should be able to perform work activities consistently, maintain regular attendance, and manage normal stress in the workplace; multitasking would be likely to cause this individual stress and heightened anxiety, but this person can accept instructions for simple and detailed tasking. She has the capacity to reacclimate to the workday routine and can apply basic workplace safety standards and adapt to basic workplace change.
>
> The person should, however, be limited to only occasional interaction with coworkers, and any interaction with the public should be occasional and incidental.

(Tr. 52-53).

Although the ALJ included the capacity to "reacclimate to the workday routine," the ALJ failed to include Dr. Clifford's opinion that plaintiff's attendance initially would be impacted (*see* Tr. 257). In fact, the ALJ implied the opposite of Dr. Clifford's opinion, as the hypothetical to the VE indicated that plaintiff should be able to "maintain regular attendance" (*see* Tr. 52). The sentence prior to the omitted opinion from Dr. Clifford is in the ALJ's hypothetical, and the sentence subsequent to this opinion is included in the ALJ's hypothetical to the VE. The ALJ included this opinion of Dr. Clifford regarding initial absenteeism elsewhere in his written decision, but it was omitted from the hypothetical to the VE (*see* Tr. 28-29, 52-53). However, the ALJ erroneously provided no

reason for rejecting this significant, probative evidence. *See Flores, supra*, 49 F.3d at 571. This opinion by Dr. Clifford in his narrative portion of his assessment likewise is not included into plaintiff's RFC (*see* Tr. 24). This too, is error. *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20.

When reviewing Dr. Clifford's opinion, the ALJ discussed much of his opinion, including the opinions omitted from the RFC that plaintiff may have functional and attendance declines when suffering stress and increased anxiety as a result of multi-tasking and that her attendance initially will be impacted (*see* Tr. 28-29). Following the ALJ's discussion of Dr. Clifford's opinion, the ALJ included the subsequent conclusions:

> This opinion is given great weight because it is consistent with the medical evidence of record. The consultant had to (sic) opportunity to review the entire medical record in forming his opinion. Because of difficulty with multi-tasking, the residual functional capacity limits her to simple, entry-level jobs. Consistent with the consultant's opinion, she is restricted to occasional and incidental interaction with the public.

(Tr. 29).

Therefore, not only did the ALJ not provide any reason for failing to include Dr. Clifford's opinion regarding initial absenteeism, but also, the ALJ indicated that he gave Dr. Clifford's opinion great weight, and that it was consistent with the medical evidence of record (*see id.*). This suggests that Dr. Clifford's opinion regarding an impact on plaintiff's initial attendance should be credited.

Although defendant argues that all of plaintiff's "medically supported limitations" were included in the hypothetical to the VE, this implies that Dr. Clifford's opinion regarding an impact on plaintiff's initial attendance is not supported by the medical

evidence of record. However, such argument does not appear to be supported by substantial evidence in the record (*see* Response, ECF No. 15, pp. 10-11). Perhaps more importantly, the ALJ did not indicate as such, and in fact, provided the opposite conclusion to defendant's argument when he concluded that Dr. Clifford's opinion was "consistent with the medical evidence of record" (*see* Tr. 29). Defendant's implied *post hoc* argument contrary to the ALJ's explicit conclusion is not persuasive. *See Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) ("[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking") (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)).

For the reasons stated, the Court concludes that the ALJ erred by not including in plaintiff's RFC a limitation encompassing plaintiff's difficulties with initial attendance. *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20. For the reasons discussed below, the Court also concludes that this error is not harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). The Court noted multiple instances of the application of these principles. *Id*. (collecting cases). The court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* (citations omitted). The Ninth Circuit noted that "in each case we look at the record as

a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts should review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

Here in this matter, the ALJ propounded a hypothetical to the VE that failed to include plaintiff's limitation, as opined by Dr.Clifford, regarding an impact on initial attendance (*see* Tr. 52-53, 257). The VE testified that a person with such a hypothetical RFC could perform work as a motel cleaner (*see* Tr. 54). The ALJ relied on this testimony by the VE in order to support his finding that plaintiff could perform past relevant work as a motel cleaner (*see* Tr. 31). This finding provided the basis for the ultimate determination that plaintiff was not disabled pursuant to the Social Security Act (*see id.*). For this reason, the error is not harmless.

Because of the faulty hypothetical, the record does not substantiate the ALJ's conclusion that plaintiff could have performed her past relevant work as a motel cleaner if her initial attendance were to be impacted. In fact, the testimony by the VE suggests otherwise. The ALJ added a further limitation to his initial hypothetical to the VE as follows:

> If this person, due to anxiety, would not be able to maintain regular attendance and work, for example, would be able to make it as far as the parking lot, but wouldn't be able to go inside, and that happened on a fairly regular basis, say three or more times a month would just not go to work, would that interfere with the maintenance of competitive employment?

(Tr. 54). The VE responded that yes, such a limitation would rule out competitive employment (*see id.*).

Although this second hypothetical does not inform as to the relevant limitation, *i.e.*, initial absenteeism, the Court notes that there is no information in the record relevant to the opined limitation regarding initial absenteeism and its affect on plaintiff's ability to work as a motel cleaner. That is the gravamen of plaintiff's complaint. This fact, and the VE's response to the second hypothetical, simply buttresses the Court's conclusion that the ALJ's error in failing to credit Dr. Clifford's opinion explicitly is not harmless.

For the reasons stated, based on the relevant record, and because of the ALJ's error in failing to credit explicitly Dr. Clifford's opinions into the RFC and hypothetical to the VE, the Court concludes that this matter should be reversed and remanded for further administrative proceedings.

Because this matter must be remanded for further review of the medical evidence and based on the record as a whole, following remand of this matter, the opinion of Dr. Maria Malcolm, Ph.D. should be evaluated anew.

2. **Plaintiff's testimony and allegations should be evaluated anew following remand of this matter**.

This Court already has concluded that the ALJ erred in his review of the medical evidence, *see supra*, section 1. The Court notes that a determination of a claimant's

credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility and testimony should be assessed anew following remand of this matter.

The Court additionally notes that the ALJ's finding that plaintiff attempted to work after her alleged onset date does not appear to bear much relevance to plaintiff's credibility (*see* Tr. 27). This is especially the case as plaintiff testified that this job lasted only two months, as she was let go because "[t]hey said that I started forgetting to do things, that I wasn't - - sorry, that I was getting very anxious and nervous and trying to rush through things and not paying attention" (*see* Tr. 47-48). Plaintiff's testimony does not appear to suggest, as found by the ALJ, "by the claimant's own admission, that despite her impairments, she retains the functional capacity to perform some type of work. Her recent work activity evidences a higher level of functioning than what she has alleged in her application and testimony" (Tr. 27).

> 3. **Whether this matter should be reversed and remanded for further consideration or for an award of benefits**.

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate in order to allow the Commissioner the opportunity to consider properly all of the medical evidence as a whole and to incorporate the properly considered medical evidence into the consideration of plaintiff's credibility and residual functional capacity. *See Sample, supra*, 694 F.2d at 642.

1

## CONCLUSION

2  Based on the stated reasons and the relevant record, the Court **ORDERS** that this

3  matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

4  405(g) to the Commissioner for further consideration.

5  **JUDGMENT** should be for plaintiff and the case should be closed.

6  Dated this 7th day of June, 2013.

7

8  *(signature)*

9  J. Richard Creatura
United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24